UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LESLIE KATHIRIA CRUZ-PIRIS,,

                             Plaintiff,                       **DECISION AND ORDER**

        -against-                            19 Civ. 2366 (PED)

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

                             Defendant.[1]
--------------------------------------------------------X
**PAUL E. DAVISON, U.S.M.J.**


       Plaintiff Leslie Kathiria Cruz-Piris brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c) seeking judicial review of a final determination of the Commissioner of Social Security

(the "Commissioner") denying her applications for disability benefits.[2]  This case is before me

for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c) (Dkt. #13).

       Presently before this Court are the parties' cross-motions for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. #15 (plaintiff's motion),

#16 (plaintiff's memorandum of law), #17 (defendant's cross-motion) and #18 (defendant's

memorandum of law).  Plaintiff argues, as the basis for her motion, that the ALJ erred because

she: (1) failed to accord controlling weight to the opinion of treating physician Dr. Fenar

Themistocle; (2) failed to consider plaintiff's obesity; and (3) failed to find plaintiff disabled

---

    [1]  Andrew Saul is now the Commissioner of Social Security and is substituted for former
Acting Commissioner Nancy A. Berryhill as the Defendant in this action, pursuant to Rule 25(d)
of the Federal Rules of Civil Procedure.

    [2]  Plaintiff alleges entitlement to two types of disability-related benefits under the Social
Security Act:  Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").
Because the definition of "disabled" governing eligibility is the same for DIB and SSI, the term
"disability benefits" refers to both.  See Paredes v. Comm'r of Soc. Sec., No. 16 Civ. 810, 2017
WL 2210865, at *1 n.1 (S.D.N.Y. May 19, 2017); 42 U.S.C. §§ 423(d), 1382c(a)(3).

despite the vocational expert's testimony that no jobs were available for a person who would be absent for one and a half days or more each month.  Dkt. #16, at 12-21.  Defendant asserts, in response, that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  Dkt. #18, at 16-25.  For the reasons set forth below, plaintiff's motion is **DENIED** and defendant's motion is **GRANTED**.

## I. BACKGROUND

The following facts are taken from the administrative record ("R.") of the Social Security Administration, filed by defendant on June 26, 2019 (Dkt. #14).[3]

A. Application History

On August 10, 2015, plaintiff filed applications for DIB and SSI, alleging that she had been disabled since March 6, 2015 due to scoliosis, disc herniation, neck pain, arthritis of the spine and a bulging disc.  R. 71, 79, 164-74.  Her claims were administratively denied on or about November 18, 2015.  R. 69-70.  On or about November 27, 2015, plaintiff requested a hearing before an administrative law judge ("ALJ").  R. 97-99.  A hearing was held on November 1, 2017 before ALJ Denise M. Martin.  R. 43-67.  Plaintiff appeared with counsel and testified at the hearing.  R. 45-63.[4]  On January 26, 2016, the ALJ issued a written decision in which she concluded that plaintiff was not disabled within the meaning of the Social Security Act ("SSA").  R. 14-27.  The ALJ's decision became the final order of the Commissioner on January 14, 2019, when the Appeals Council denied plaintiff's request for review.  R. 1-6.

---

[3]  The Court conducted a plenary review of the entire administrative record, familiarity with which is presumed.  More specifically, I assume knowledge of the facts surrounding plaintiff's medical treatment and do not recite them in detail, except as germane to the analysis set forth below.

[4]  Vocational Expert Sara Elizabeth Gibson also testified at the hearing.  R. 64-66.

Plaintiff, by and through council, commenced this action on March 15, 2019.

B. <u>Dr. Themistocle's Opinion</u>

Plaintiff began treatment with Dr. Fenar Themistocle on August 19, 2015, at which time he administered an epidural steroid injection to address plaintiff's low back pain.  R. 249-50, 300.  On September 16, 2015, Dr. Themistocle administered a second injection, which resulted in an 85% improvement in plaintiff's radicular low back pain.  R. 261-62, 300.

Plaintiff returned to Dr. Themistocle on October 26, 2015.  R. 300.  A physical examination revealed the following: tenderness to palpation over the neck; decreased range of motion (flexion and rotation) in the cervical spine; positive Spurling test[5] bilaterally; diffuse tenderness/spasm upon palpation of the lower back; painful right sacroiliac joint; painful flexion, extension of the lumbar spine; and painful rotation of the lumbar spine (bilaterally).  R. 301.  In response to plaintiff's complaints of severe neck pain ("shooting to the upper extremities"), Dr. Themisotcle administered a cervical epidural steroid injection.  R. 300-05.  He administered a second cervical epidural steroid injection on November 25, 2015.  R. 308-09.

On December 4, 2015, Dr. Themistocle issued a medical source statement on plaintiff's behalf.  R. 318-24.  Dr. Themistocle stated plaintiff had excruciating pain in her lumbar spine, cervical spine and both knees; he described plaintiff's symptoms as follows: "no symptoms, dizziness, fatigue, pain has improved 60%."  R. 318.  He noted that plaintiff required no assistive devices to walk and stand.  R. 323.  Dr. Themistocle identified the following positive objective

---

[5] A Spurling test is an "evaluation for cervical nerve root impingement in which the patient extends the neck and rotates and laterally bends the head toward the symptomatic side; an axial compression force is then applied by the examiner through the top of the patient's head; the test is considered positive when the maneuver elicits the typical radicular arm pain." *Farlex Partner Medical Dictionary* © Farlex 2012, accessed at https://medical-dictionary.thefreedictionary.com/Spurling+test.

signs: joint warmth; reflex changes; impaired sleep; weight change; impaired appetite; abnormal

posture; tenderness; swelling; muscle spasm; muscle weakness; muscle atrophy; abnormal gait;

and positive straight leg raising test.  R. 318.  He stated that plaintiff had psychological

conditions (depression, anxiety and personality disorder) which affected her pain. R. 319.  Dr.

Themistocle opined that plaintiff frequently experienced severe pain which would interfere with

her attention and concentration, and that her ability to deal with work stress was moderately

limited.  Id.  He stated that plaintiff's medication caused "dizziness, drowsiness, tiredness."  Id.

Dr. Themistocle opined that plaintiff:

> -could sit for 15 minutes maximum before needing to walk for 30 minutes;
> -needed to elevate both legs at chest level or higher while sitting (to minimize pain);
> -could stand or walk less than 15 minutes before needing to lie down or recline for 30 minutes;
> -could sit less than 1 hour total in an 8-hour workday;
> -could stand or walk for a total of one hour in an 8-hour workday;
> -needed to lie down or recline in an easy chair for a total of 2 hours during an 8 hour workday (in addition to regular breaks at 2-hour intervals), to relieve pain and fatigue.

R. 319-21.  Dr. Themistocle also opined that plaintiff could constantly lift up to 10 pounds (but

never more than that) and occasionally balance, stoop, bend and rotate her neck, reach hands and

arms in any direction and handle and finger with both hands.  R. 322-23.  He estimated that

plaintiff would be absent from work more than three days a month.  R. 324.

C. Consultative Opinion

On October 22, 2015, Dr. Sharon Revan conducted a consultative internal medicine

examination of plaintiff.  R. 295-98.  Plaintiff reported neck pain radiating to the right shoulder

and arm, and lower back pain radiating down her right leg.  R. 295.  She stated that her pain level

was 8/10, worsened with sitting, standing, walking and laying down for too long and improved

by hot baths and massaging.  Id.  Plaintiff reported that she showers and dresses herself, and is

-4-

able to cook, clean, do laundry and shop.  Id.

Dr. Revan observed that plaintiff appeared to be in no acute distress and used no assistive devices.  R. 296.  Her gait was normal; she could walk on heels and toes without difficulty.  Id. Plaintiff's stance was normal and her squat was full.  Id.  She needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. Id.

Plaintiff's skin, lymph nodes, head, face, eyes, ears, nose, throat and neck were normal. Id.  Her lungs were clear to auscultation and percussion was normal.  Id.  There was no significant chest wall abnormality and diaphragmatic motion was normal.  Id.  Plaintiff's heart rhythm was regular with no audible murmur, gallop or rub.  Id.  Her abdomen and extremities were normal.  R. 296-97.  Neurologic examination revealed no motor or sensory deficit; plaintiff had full strength in her upper and lower extremities.  R. 297.  Her hand and finger dexterity were intact and her grip strength was 5/5 bilaterally.  Id.

Plaintiff's cervical spine showed full flexion, extension, lateral flexion (bilaterally) and full rotary movement (bilaterally).  R. 296.  There was mild scoliosis to the right.  Id.  Plaintiff's lumbar spine showed flexion 90°, full lateral flexion (bilaterally) and full rotary movement (bilaterally).  R. 296-97.  There was pain in plaintiff's low back upon palpation; straight-leg raising test was negative, bilaterally.  R. 297.  Plaintiff had full range of motion ("ROM"), bilaterally, of her shoulders, elbows, forearms, wrists, hips, knees and ankles.  Id.  She had thigh pain upon ROM of her right leg.  Id.

Dr. Revan diagnosed scoliosis and upper/lower back pain.  Id.  She noted that plaintiff's prognosis was "fair."  Id.  Dr. Revan opined:

In my opinion, the claimant has no limitations with speech, vision or

> hearing.  There are no limitations with upper extremities for fine and gross motor activities.  Mild limitations with sitting, standing, walking, and laying down due to her back pain.  No limitation with personal grooming or activities of daily living.

Id.

D.  <u>Vocational Expert's Hearing Testimony</u>

Vocational Expert Sara Elizabeth Gibson classified plaintiff's past work as a cook/helper, fast-food manager and cleaner.  R. 64.  The ALJ posed the following hypothetical to Ms. Gibson:

> I want you to assume an individual of the claimant's age, education, and work experience who would be limited to light work.  No climbing of ladders, ropes, or scaffolds.  Occasional climbing of ramps and stairs, with occasional balancing, stooping, kneeling, crouching, and crawling.  No overhead reaching.  She would be limited to frequent but not repetitive handling, fingering, and reaching with the right upper extremity.  Would the hypothetical person be capable of doing any of the claimant's past work?

R. 64-65.  Ms. Gibson responded that all of claimant's past work was eliminated by the limitation of no overhead reaching; she testified, however, that other jobs were available in the national economy for that hypothetical person (packer, assembler, sorter).  R. 65.  The ALJ asked if any jobs were available if the hypothetical was reduced from light to sedentary (with all other limitations included); Ms.. Gibson responded affirmatively (document preparer, telephone clerk, charge account clerk).  Id.  Finally, in response to a question from plaintiff's counsel, Ms. Gibson testified that no jobs were available for a person who would be consistently absent for one and a half or more days per month.  Id.

## II.  LEGAL STANDARDS

A.  <u>Standard of Review</u>

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

-6-

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  See 42 U.S.C. § 1383(c)(3).  "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).  Rather, the court's review is limited to "'determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.'"  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)).

The substantial evidence standard is "even more" deferential than the "'clearly erroneous' standard."  Brault v. Soc. Sec. Admin, 683 F.3d 443, 448 (2d Cir. 2012).  The reviewing court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence.  See 42 U.S.C. § 405(g); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence is "'more than a mere scintilla'" and "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

"However, where the proper legal standards have not been applied and 'might have affected the disposition of the case, the court cannot fulfill its statutory and constitutional duty to

review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.  Failure to apply the correct legal standards is grounds for reversal.'" Velez v. Colvin, No. 14 Civ. 3084, 2017 WL 1831103, at *15 (S.D.N.Y. June 5, 2017) (citing Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004)).  Thus, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear in relation to the record evidence, remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).

B.  Statutory Disability

A claimant is disabled under the SSA when he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In addition, a person is eligible for disability benefits under the SSA only if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security Regulations set forth a five-step sequential analysis for evaluating whether a person is disabled under the SSA:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment or combination of impairments;

-8-

(3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;

(4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and

(5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre, 758 F.3d at 150 (citing 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v)).[6]

The claimant bears the burden of proof as to the first four steps of the process. See Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008). If the claimant proves that his impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth and final step. See Brault, 683 F.3d at 445.

### III.  THE ALJ'S DECISION

The ALJ evaluated plaintiff's disability claim pursuant to the five-step sequential analysis. R. 17-18. See 20 C.F.R. § 404.1520(a)(4)(I)-(v) and discussion, *supra*. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since March 6, 2015, the alleged onset date of her disability. R. 18. At step two, the ALJ concluded that plaintiff has the following severe impairments: cervicalgia; cervical radiculitis; cervical disc displacement; chronic pain syndrome; lumbosacral spondylosis; lumbar disc displacement; lumbosacral neuritis; scoliosis; myalgia and myositis; lumbago; bilateral knee distal quadriceps and distal patellar tendinopathy; and knee osteoarthritis. Id. At step three, the ALJ determined that plaintiff's impairments (individually or combined) did not meet or medically equal the

---

[6]  Many of the regulations and Social Security Rulings cited herein have been amended subsequent to the ALJ's decision. For the sake of brevity, I discuss (and have applied) the relevant regulations/rulings as they existed at the time of the ALJ's decision.

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 19.

Next, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work (as defined in CFR 404.1567(b) and 416.967(b)) involving: (1) frequently fingering and handling objects with the right upper extremity; (2) frequently reaching with the upper right extremity; (3) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; (4) no overhead reaching; and (5) no climbing ladders, ropes or scaffolds.  R. 19-20.  In reaching this conclusion, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "opinion evidence" in accordance with 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929 and SSR 16-3p.  R. 20.  At step four, the ALJ determined that plaintiff is unable to perform any past relevant work.  R. 25.  At step five, based upon the vocational expert's hearing testimony, the ALJ concluded that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 25-26.  Thus, the ALJ found plaintiff "not disabled" as defined in the SSA.  R. 27.

## IV.  DISCUSSION

A.  Weight Accorded to Treating Physician's Opinion

Plaintiff argues that the ALJ erred because she did not accord controlling weight to Dr. Themistocle's opinion.  "[A] treating physician's statement that the claimant is disabled cannot itself be determinative."  Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012) (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)).  However, the ALJ must give "controlling weight" to a "medical opinion" from a claimant's "treating source" if the treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the administrative record.  20 C.F.R. §

404.1527(c)(2).  See Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015).  A "treating source" is a claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 404.1502. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments, including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).

If an ALJ determines that a treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in deciding what weight to accord that opinion: (1) the length of the treatment relationship and frequency of treatment; (2) the nature and extent of the treatment relationship; (3) explanations the source provides for the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) the treating source's specialization; and (6) any other factors brought to the ALJ's attention which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2).  The ALJ need not recite each factor explicitly, provided the ALJ's decision reflects substantive application of the regulation.  See Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). However, an ALJ's failure to set forth "good reasons" for the weight accorded to a treating source opinion is a ground for remand.  See Greek, 802 F.3d at 375.

Here, the ALJ addressed Dr. Themistocle's opinion as follows:

In December 2015, Dr. Themistocle completed a medical source statement

-11-

in which he opined that the claimant's spinal impairments and pain produced limitations in which [sic] she could sit less than one hour in an eight-hour work period, stand or walk only one hour in an eight-hour work period, and had to rest two hours in an eight-hour work period[.] I gave little weight to this portion of his opinion because it is internally inconsistent.  These opined maximum capacity of these opinions [sic] do not even total an eight-hour work period, and the questions pertain to total cumulative time.  Moreover, Dr. Themistocle and the claimant's other physicians do not support these opinions.

Dr. Themistocle also opined that the claimant could lift 10 pounds constantly[.] He opined that she could occasionally perform postural activities and occasionally use her hands.  He opined that she would likely be absent from work more than three times a month[.] Dr. Themistocle and the other physicians of record do not entirely support these opinions.  Dr. Emili noted that she had full strength rated at 5/5 and no focal neurological deficits[.] The claimant had limitation with of [sic] her range of motion, muscle spasms, and tenderness to palpation, though.  Consideration of these mixed medical examination findings, though, lends some support to this portion of Dr. Themistocle's opinion that the claimant had had [sic] postural and manipulative limitations but not that she could lift only 10 pounds.  As such, I gave some weight to these portions of Dr. Themistocle's opinion.

I gave little weight to the portion of his opinion that the claimant had psychological conditions of depression, anxiety, and personality disorder that affected her pain or that she had limitation in her attention, concentration, or stress tolerance[.] Neither Dr. Themistocle nor other physicians noted that the claimant had such symptoms or mental status examination findings to support this opinion.  The claimant had no mental health treatment.

I also gave little weight to the portion of his opinion that the claimant had medication side effects that caused dizziness, drowsiness, and tiredness[.] Again, neither Dr. Themistocle nor other physicians noted recurring medication side effects.  Dr. Emili noted the denial of medication side effects[.] Moreover, the claimant only testified to experiencing constipation as a side effect, which I also note is not corroborated by the medical evidence.

R. 24.

Plaintiff does not challenge the ALJ's decision to award "little weight" to Dr. Themistocle's opinion that plaintiff had psychological conditions which affected her pain, that her ability to deal with work stress was moderately limited and that her medications caused her to be dizzy, drowsy and tired.  R. 319.  Rather, plaintiff asserts that the medical records provide "overwhelming evidence that despite aggressive treatment, plaintiff continues to suffer pain all

over her body that would prevent her from working."  Dkt. #16, at 16.  Thus, plaintiff argues that

the ALJ erred by failing to accord controlling weight to Dr. Themistocle's opinion that plaintiff:

could sit less than 1 hour total in an 8-hour workday; could stand or walk for a total of one hour

in an 8-hour workday; needed to lie down or recline in an easy chair for a total of 2 hours during

an 8 hour workday; could never lift more than 10 pounds; and would be absent more than three

days per month.  R. 319-24.  I disagree.  In my view, the record supports the ALJ's explanation

for the weight accorded to Dr. Themistocle's opinion.

      First, as the ALJ noted, although the record contains some abnormal findings upon

physical examination, clinical examination findings from plaintiff's treating physicians

(summarized below) do not, on the whole, support the portions of Dr. Themistocle's opinion in

issue:

      • 5/14/15: gait normal; straight leg raise negative.  R. 282.

      • 10/26/15:  tenderness to palpation over the neck; decreased range of motion (flexion
and rotation) in the cervical spine; positive Spurling test bilaterally; diffuse
tenderness/spasm upon palpation of the lower back; painful right sacroiliac joint; painful flexion,
extension of the lumbar spine; painful rotation of the lumbar spine (bilaterally); 85%
improvement in plaintiff's radicular low back pain   R. 300-01.

      • 12/21/15:  physical examination was normal (including active ROM In her cervical
spine) except for "mild restricted ROM" and positive straight leg sign.  R. 334, 354.

      • 1/20/16: tender back with spasms; normal strength in all muscle groups; normal ROM
in all joints.  R. 360.

      • 2/18/16: tender back with spasm and "decreased" ROM.  R. 362, 365.

      • 3/9/16:  lower back tender to touch; "moderate restricted ROM" in right knee.  R. 370.

      • 3/18/16: tenderness in neck and shoulder with spasm and decreased ROM.  R. 377.

      • 4/18/16: severe pain in neck with moderate decreased ROM; moderate lower back
tenderness; moderate tenderness upon palpation in both ankles; positive straight leg test

(bilaterally).  R. 383.[7]

• 4/27/16: normal findings, except for neck tenderness, stiffness and spasm.  R. 390.

• 6/17/16: mild tenderness in lower back; mild stiffness in neck.  R. 405.[8]

• 7/15/16:  tenderness upon palpation in the lower back; moderate tenderness upon palpation in the right knee and right shoulder; mild tenderness upon palpation in the right ankle. R. 412-13.

• 9/15/16:  "tender back" but normal strength in all muscle groups and normal ROM in all joints.  R. 426-27.

• 10/14/16:  muscle tenderness in neck with limited ROM; severe tenderness upon palpation of her back; "severely symptomatic" ROM in back.  R. 434.

• 10/28/16: "mild para vertebra tenderness."  R. 440.

• 11/11/16: normal strength in all muscle groups; normal ROM In all joints.  R. 446.

• 12/9/16: neck tender to palpation; positive Spurling test; limitation of movement in lower back; positive bilateral straight leg raising.  R. 456-57.

• 1/9/17: tenderness and spasm upon palpation of neck; "mild tenderness" in lower back. R. 467.

• 2/8/17:  pain upon palpation and lateral rotation of neck; spinal tenderness upon palpation of back; "good flexion" of lumbar spine; negative straight leg raising test (bilaterally); normal strength in all muscle groups; normal ROM in all joints.  R. 475.

• 2/15/17:  bilateral cervical paravertebral spasms and tenderness; no spinal tenderness in back; normal strength in all muscle groups; normal ROM in all joints; 5/5 motor strength in all extremities.  R. 482-83.

• 3/8/17:  mild tenderness and mild spasm in lower back; "mild spurling test positive." R. 489.

• 4/7/17:  no spinal tenderness in back; normal strength in all muscle groups; normal

---

[7]  Plaintiff reported that pain medication was helping, with no side effects.  R. 380.

[8]  Plaintiff reported that "her lower back has been good" and that a cervical steroid injection had helped but had worn off.  R. 402.

ROM in all joints; 5/5 motor strength in all extremities.  R. 496.

• 5/5/17:  asymmetry in neck and shoulders; moderate tenderness upon palpation of neck and shoulders; "moderately symptomatic" ROM in neck and shoulders; swelling in right wrist with tenderness upon palpation; "moderately symptomatic" ROM in right wrist.  R. 504-05.[9]

• 6/5/17:  pain upon palpation of cervical spine; tenderness upon palpation of lower back; normal strength in all muscle groups; normal ROM in all joints.  R. 511.

• 7/5/17:  no spinal tenderness in back; moderate tenderness upon palpation of neck and shoulders; "moderately symptomatic" ROM in neck and shoulders; swelling in right wrist with tenderness upon palpation; "moderately symptomatic" ROM in right wrist.  R. 518.

• 8/4/17:  tender back and right hip with "decreased" ROM; 5/5 motor strength in all extremities.  R. 524.

• 9/29/17:  "tender back with spasm" and 5/5 motor strength in all extremities.  R. 531-32.

• 10/27/17:  tenderness in neck and lower back upon palpation; "limitation of movement" in lower back; moderate tenderness upon palpation of neck and shoulders, "moderately symptomatic" ROM in neck and shoulders; swelling in right wrist with tenderness upon palpation; "moderately symptomatic" ROM in right wrist, pain upon palpation of right hip with "limited and painful" abduction; tenderness upon palpation of right knee with limited ROM.  R. 540-41.

• 11/27/17:  lower back tenderness.  R. 36.

* * *

Similarly, the clinical findings from plaintiff's consultative examination (October 22, 2015) do not support Dr. Themistocle's restrictive opinion.  Neurologic examination revealed no motor or sensory deficit; plaintiff had full strength in her upper and lower extremities.  R. 297. Her hand and finger dexterity were intact and her grip strength was 5/5 bilaterally.  Id. Plaintiff's cervical spine showed full flexion, extension, lateral flexion (bilaterally) and full rotary movement (bilaterally).  R. 296.  There was mild scoliosis to the right.  Id.  Plaintiff's

---

[9]  Plaintiff reported that her neck pain and mid-back pain had improved 70%.  R. 500.

lumbar spine showed flexion 90°, full lateral flexion (bilaterally) and full rotary movement (bilaterally).  R. 296-97.  There was pain in plaintiff's low back upon palpation; straight-leg raising test was negative, bilaterally.  R. 297.  Plaintiff had full range of motion ("ROM"), bilaterally, of her shoulders, elbows, forearms, wrists, hips, knees and ankles.  Id.  She had thigh pain upon ROM of her right leg.  Id.

In sum, as the ALJ noted, the portion of Dr. Themistocle's opinion in issue (that plaintiff could sit less than 1 hour total in an 8-hour workday, stand or walk for a total of one hour in an 8-hour workday, needed to lie down or recline in an easy chair for a total of 2 hours during an 8 hour workday, could never lift more than 10 pounds and would be absent more than three days per month) is inconsistent with other substantial evidence in the record.  The ALJ's decision included a thorough discussion of the medical record (R. 20-22), after which the ALJ concluded:

> These medical records show that the claimant had recurring symptoms of pain in her back and neck that radiated to her extremities.  Diagnostic imaging studies showed that she had multilevel disc disease and spinal disorder as well as bilateral knee osteoarthritis and tendinopathy.  The claimant had sporadic abnormal findings such as limited ranges of motion of the spine, tenderness, and muscle spasms.  However, overall, she had recurring findings of intact or normal motor function and sensory function, intact reflexes, and normal gait.  She reported numbness in her extremities, but she had normal sensory function and an EMG that was negative for abnormality.  These findings do not entirely support the claimant's allegations that she could stand no more than 20 minutes, walk no more than 1.5 blocks, sit no more than 30 minutes, and lift less than 10 pounds.

R. 22.  At bottom, the ALJ proffered "good reasons" for the weight she accorded Dr. Themistocle's opinion.  Accordingly, plaintiff's contention that the ALJ erred by failing to give controlling weight to Dr. Themistocle's opinion is meritless.[10]

---

[10]  Plaintiff tersely raises two additional arguments which do not warrant lengthy discussion.  First, plaintiff broadly alleges that the ALJ erroneously "rejected the medical opinions of all the experts[.]" Dkt. #16, at 16.  This is incorrect: the ALJ accorded some weight to portions of Dr. Themistocle's opinion; she also accorded some weight to to the consultative

B.  Failure to Consider Obesity

Plaintiff argues that the ALJ "erred by failing to consider plaintiff's obesity" in violation
of SSR 02-1p. Dkt. #16, at 18.  That ruling provides "guidance on SSA policy concerning the
evaluation of obesity in disability claims" and refers to guidelines from the National Institutes of
Health:

> The National Institutes of Health (NIH) established medical criteria for
> the diagnosis of obesity in its Clinical Guidelines on the Identification,
> Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication
> No. 98-4083, September 1998).  These guidelines classify overweight and obesity
> in adults according to Body Mass Index (BMI). BMI is the ratio of an individual's
> weight in kilograms to the square of his or her height in meters (kg/m2).  For
> adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9
> as "overweight" and a BMI of 30.0 or above as "obesity."
> The Clinical Guidelines recognize three levels of obesity.  Level I includes
> BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9.  Level III, termed
> "extreme" obesity and representing the greatest risk for developing
> obesity-related impairments, includes BMIs greater than or equal to 40.  These
> levels describe the extent of obesity, but they do not correlate with any specific
> degree of functional loss.

SSR 02-1p, 2002 WL 34686281, at *1-2 (S.S.A. Sept. 12, 2002).

Under SSR 02-1p, "obesity is a 'severe' impairment [at step two of the sequential
evaluation of disability claims] when, alone or in combination with another medically
determinable physical or mental impairment(s), it significantly limits an individual's physical or
mental ability to do basic work activities."  Id. at *4.  The ruling also instructs adjudicators to

─────────────────────

examiner's opinion that plaintiff had mild limitations with sitting, standing, walking and lying
down due to pain.  R. 24.  Second, plaintiff alleges that the ALJ erred by failing to contact Dr.
Themistocle to further develop the record.  Dkt. #16, at 17-18.  "An ALJ need only seek
additional information from a treating physician when there are 'clear gaps in the administrative
record.'" Rodriguez-Craig v. Berryhill, No. 18 Civ. 6873, 2020 WL 240868, at *3 (E.D.N.Y.
Jan. 16, 2020) (quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)).  Here, however, I see
no gap in the administrative record; Dr. Themistocle's treatment notes appear to be complete.

consider the effects of obesity throughout the sequential evaluation process, including when assessing an individual's RFC.  Id. at *3, *6.  However, "[c]ase law holds that an ALJ's obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities." Bonilla-Bukhari v. Berryhill, 357 F. Supp.3d 341, 353 (S.D.N.Y. 2019) (quotation marks and citation omitted).

Here, plaintiff is correct that the ALJ's decision did not mention plaintiff's obesity.  R. 14-27.  Plaintiff also correctly asserts: (1) "[t]hroughout the medical records plaintiff's BMI levels were above the obesity threshold of 30.0"; (2) plaintiff's BMI was noted as "problem history" in numerous treatment notes; and (3) on March 25, 2015, plaintiff was counseled on weight loss and encouraged to increase activity and follow a healthy heart diet.  Dkt. #16, at 18-19 (citing R. 283-85, 341-46, 357-66, 367-94, 395-429, 453-62, 491-95, 507-25).  However, a thorough review of the medical records does not reveal–and plaintiff does not point to–any notes from any treating or consulting provider indicating that plaintiff's obesity had any particular impact on any of her impairments.  In other words, "the record reflects that plaintiff's treating and consultative examining medical sources were aware of plaintiff's obesity, but there is no indication that any medical source attributed any symptoms, limitations of function, or exacerbation of other impairments to her weight." Bonilla-Bukhari, 357 F. Supp.3d at 353-54 (quotation marks and citation omitted).  Accordingly, the ALJ's failure to consider plaintiff's obesity was not error.  See Mancuso v. Astrue, 361 F. App'x 176, 178 (2d Cir. 2010) (ALJ's failure to consider plaintiff's obesity in RFC assessment was not error:  there was "no factual basis for thinking that any additional and cumulative effects of obesity limited plaintiff's ability

to perform light work" because medical reports referenced plaintiff's weight but "failed to identify limitations therefrom" and "no limitations sufficient to preclude light work were identified upon physical examination of [plaintiff's] overall condition.").

C.  Vocational Expert Testimony

Plaintiff argues that the ALJ should have found her disabled based upon testimony from the vocational expert that no jobs were available for a person who would be absent one and a half days or more per month.  Dkt. #16, at 20-21.  The vocational expert so testified in response to the following question from plaintiff's counsel: "If the person were to miss two days of work consistently on a monthly basis unscheduled, that would have what impact, if any, on the work you listed?"  R. 66.

As discussed above, the ALJ did not err by declining to give controlling weight to Dr. Themistocle's opinion that plaintiff would be absent more than three days per month.  Plaintiff argues that the ALJ accorded "some weight" to Dr. Themistocle's opinion and, therefore, "[e]ven if the ALJ accepted half the amount of time the treating physician found, plaintiff would still miss at least one and [a] half days of work per month, and as per the VE, there would be no jobs available."  Dkt. #66, at 20 n.23.  But the ALJ's RFC assessment did not include an attendance limitation, and plaintiff points to no evidence in the record which would support her claim that she would be absent at least one and a half days per month.  In sum, substantial record evidence supports the ALJ's RFC determination, which formed the basis for the ALJ's hypothetical to the vocational expert.  The vocational expert's testimony in response supports the ALJ's conclusion that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. 25-26.  Accordingly, plaintiff's argument is meritless.

## V.  CONCLUSION

For the reasons set forth above, the Commissioner's motion is **GRANTED** and plaintiff's motion is **DENIED**.

The Clerk of the Court is directed to terminate the pending motions (Dkt. #15, #17) and close this case.

Dated: May 21, 2020                                  **SO ORDERED**
      White Plains, New York

_____
PAUL E. DAVISON, U.S.M.J.